EXHIBIT A-1   Complaint

Redacted by Clerk of Court

ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Monday, May 26, 2014 3:13:21 PM
CASE NUMBER: 2014 CV 03068 Docket ID: 19126913
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

## IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, OHIO
## CIVIL DIVISION

| | | |
|---|---|---|
| **KATHERINE MITCHELL** | * | Case No.: |
| 35 Illinois Avenue | * | |
| Dayton, OH 45410, | * | Judge: |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| **CITY OF DAYTON** | * | **COMPLAINT** |
| 101 W. Third Street | * | |
| Dayton, OH 45402, | * | |
| | * | |
| **JOHN SYX a/k/a JACK SYX** | * | |
| 116 Nordale Avenue | * | |
| Dayton, OH 45420 | * | |
| | * | |
| **MICHAEL JOHNSON** | * | |
| 161 Illinois Avenue | * | |
| Dayton, OH 45410 | * | |
| | * | |
| **OFFICER JOHN DOES 1 – 6** | * | |
| Addresses Unknown | * | |
| | * | |
| Defendants. | * | |

Plaintiff Katherine Mitchell, for her Complaint against Defendants City of Dayton ("Dayton"), John Syx a/k/a Jack Syx, Michael Johnson and Officer John Does 1-6, alleges as follows:

1.     Ms. Mitchell is a resident of Ohio who currently resides at 35 Illinois Avenue, Dayton, Ohio.

2. Mr. Syx is a resident of Dayton, Ohio and a housing inspector for Dayton.

3. Michael Johnson is a resident of Dayton, Ohio and a housing inspector for Dayton.

4. On May 13, 2011, Ms. Mitchell purchased the property located at 22 Illinois Avenue, Dayton, Ohio (the "Property").

5. Ms. Mitchell knew the Property needed extensive work and planned to invest the time and money to fix up the Property so that she, her four-year old daughter and her fiancee could make it their family home.

6. Ms. Mitchell did not live in the Property when she purchased it, but rather lived with her parents right across the street at 15 Illinois Avenue, Dayton, Ohio (the "Parents' Property").

7. Upon purchasing the Property, Ms. Mitchell immediately began renovations. Ms. Mitchell began tearing out walls and old wires inside the Property. Ms. Mitchell hired Affordable Roofing & Siding to complete roof work to prevent roof leaks. She began purchasing fixtures for the inside of the home.

8. Ms. Mitchell secured the home when she was finished working on it each day and monitor it from her Parent's Property.

9. On or about March 15, 2012, Mr. Syx kicked in the back door to the Property and took photos on the inside of the Property. Ms. Mitchell was not provided any notice that Mr. Syx intended to inspect the Property and Mr. Syx entered the Property without Ms. Mitchell's permission or knowledge.

10. Mr. Syx trespassed on the Property and created a public nuisance by kicking in the door and failing to secure it upon his departure.

2

11.     On March 16, 2012, Dayton sent to Ms. Mitchell a Structural Nuisance Legal Order (the "Nuisance Order"). A copy of the Nuisance Order is attached as Exhibit A. Mr. Syx signed the Nuisance Order on behalf of the Housing Inspection Division of the Department of Building Services for Dayton.

12.     At the time the Nuisance Order was issued, the Property was structurally sound. The Property was secured. The Property did not pose a threat to any adjacent property or to the safety of the nearby residents.

13.     The Nuisance Order provides that Ms. Mitchell was "ordered to abate the public nuisance, by either rehabilitation or by removal of the building, structure or nuisance." Exhibit A, p. 1. The Nuisance Order further provides that Ms. Mitchell had 15 days in which to obtain a nuisance rehab permit. *Id.* In addition, the Nuisance Order required Ms. Mitchell to obtain a Special Services Inspection prior to obtaining the rehab permit:

> THIS PROPERTY IS IN THE NUISANCE ABATEMENT PROGRAM. VIOLATIONS ARE TOO NUMEROUS TO LIST. OBTAIN A SPECIAL SERVICES INSPECTION PRIOR TO OBTAINING A REHAB PERMIT.

Exhibit A, p. 2.

14.     Ms. Mitchell did not obtain a permit, however, she continued to work on the Property. Ms. Mitchell received nothing further from Dayton for months.

15.     In September 2012, Ms. Mitchell's daughter was outside of the Parents' Property playing when Mr. Syx arrived at that address. Mr. Syx began questioning Ms. Mitchell's daughter – who was only four years old at the time – about garbage behind the Parents' Property. Ms. Mitchell's daughter was very afraid of Mr. Syx. Anthony Johnson, the child's father, approached Mr. Syx and asked what he was doing. Mr. Syx responded that questioning children is how he obtains his information. At this time, Anthony Johnson

3

instructed Mr. Syx to leave his daughter alone.  Mr. Syx then issued a written violation pertaining to the garbage.

16.     Several days later, Mr. Syx appeared at 15 Illlinois Avenue.  Again Mr. Syx began questioning Ms. Mitchell's daughter.  Again, Ms. Mitchell's daughter was afraid of Mr. Syx. Anthony Johnson intervened.  This time, Mr. Syx, having already frightened the child, touched her shirt and told her it was pretty before leaving.

17.     As a result of Mr. Syx's conduct, on or about September 29, 2012, Ms. Mitchell and Anthony Johnson went to the Division of Housing Inspection in Dayton to file a complaint against Mr. Syx.  Ms. Mitchell spoke to Jackie McPherson, an employee of the Division of Housing Inspection, about both the incident involving her daughter and the Nuisance Order.

18.     Ms. McPherson instructed Ms. Mitchell to contact Nathan Zebrowski, an employee of the Division of Housing Inspection, regarding the Nuisance Order.  Ms. McPherson also told Ms. Mitchell that she would have the Property removed from the vacant lot list kept by Dayton and that she would not have difficulty obtaining the rehab permits.

19.     Ms. Mitchell called Mr. Zebrowski on or about September 29, 2012 and left a message.  She never received a call back from Mr. Zebrowski.

20.     On March 16, 2013, a Certification for Demolition of a Public Nuisance was signed by three employees of the Housing Department (two inspectors and the area supervisor).  Ms. Mitchell did not receive the Certification for Demolition at or near the time it was signed.  A copy of the Certification is attached as Exhibit B.

21.     On March 29, 2013, without notice to or permission from Ms. Mitchell, an employee or agent of Hart Environmental Resources entered the Property and conducted an asbestos inspection.  A report regarding the inspection was prepared on April 6, 2013.  A copy

4

of the asbestos report is attached as Exhibit C. The report was prepared "under contract with the City of Dayton."

22.     Dayton hired a tree removal service to remove trees on the Property. Without notice to or permission from Ms. Mitchell, a tree removal service removed trees on the front of the Property on April 29, 2013 and on the back of the Property on April 30, 2013.

23.     During the removal on April 29, 2013, one of the trees fell on the roof of the Property. The roof was significantly damaged by the tree and the repairs that Ms. Mitchell had completed in 2011 were ruined.

24.     On April 30, 2013, Ms. Mitchell called Ms. McPherson regarding the removal of the trees. Ms. McPherson refused to speak to Ms. Mitchell and refused to provide any information regarding the Property. Ms. McPherson referred Ms. Mitchell to Kevin Powell, who never returned Ms. Mitchell's phone calls.

25.     On April 30, 2013, a housing inspector, Michael Johnson, was at the Property. Michael Johnson stated to Ms. Mitchell that the home was going to be demolished. This was the first that Ms. Mitchell learned that the Property was going to be demolished. Michael Johnson also told Ms. Mitchell that Mr. Syx was no longer the housing inspector for the Property.

26.     Because the Division of Housing Inspection would not respond and because Michael Johnson was on the Property without notice to or permission of Ms. Mitchell, she called the Dayton Police Department. The Police stated that there was nothing they could do for Ms. Mitchell.

27.     On May 6, 2013, Ms. Mitchell obtained an estimate from Affordable Roofing & Siding to repair the roof as a result of the tree damage. While Ms. Mitchell, Anthony Johnson and Affordable Roofing & Siding were at the Property obtaining the estimate, Michael

5

Johnson appeared in plain clothes, driving his personal vehicle and told them they could not be on the Property. Ms. Mitchell instructed Michael Johnson to leave and he did.

28.     Later in the evening, Michael Johnson appeared at the Property and posted a notice on the Property stating that it was a violation for any person, including the owner, to be on the Property without written consent from Division of Housing Inspection.

29.     On May 9, 2013, Michael Johnson spray painted "Public Nuisance" on the front of the Property.

30.     On May 12, 2013 – Mother's Day – Michael Johnson drove by the Property. An hour later, two Dayton Police Officers appeared at the Parents' Property and asked whether anyone had been on the Property. Ms. Mitchell said that no one was on the Property. The City of Dayton Police Officers responded that everything that was going on with the Property was in their computers and they would hate to have to arrest Ms. Mitchell on Mother's Day.

31.     Approximately ten minutes after the two officers left, two more officers showed up at the Property with their guns drawn and looked in each window. Approximately ten minutes after those officers left, a Dayton Police car drove past the Property.

32.     On May 17, 2013, Ms. Mitchell and Anthony Johnson went to the Division of Housing Inspection to obtain permits to work on the Property. Michael Johnson appeared and returned to get Dennis Zimmer. Both Michael Johnson and Mr. Zimmer told Ms. Mitchell she could not have any permits because the Property was going to be torn down. Mr. Zimmer authorized a permit for lawn mowing purposes only that expired on June 1, 2013. A copy of the permit is attached as Exhibit D.

33.     As they were leaving the Division of Housing Inspection, Mr. Zimmer followed Ms. Mitchell and Anthony Johnson out and accused Anthony Johnson of threatening him. A

security guard came outside and informed Ms. Mitchell and Anthony Johnson that they were no longer allowed in the Division of Housing Inspection building.

34.     On May 17, 2013 – the same day Ms. Mitchell received the mowing permit – Michael Johnson placed another sign on the Property stating no one was permitted on the Property.

35.     On July 29, 2013, Ms. Mitchell called Mr. Zimmer and requested a renewal of the lawn mowing permit. Ms. Mitchell also requested a meeting to discuss putting a progress plan together for the rehabilitation of the Property. Mr. Zimmer did not answer.

36.     On July 30, 2013, Mr. Zimmer left a message for Ms. Mitchell stating she could come down to the Housing Department to get a lawn mowing permit. He was silent as to the rehabilitation progress request. Ms. Mitchell obtained the lawn mowing permit the same day.

37.     On July 31, 2013, Ms. Mitchell again called Mr. Zimmer to discuss a rehabilitation plan. Mr. Zimmer would not entertain a plan and would only meet to discuss the demolition of the Property.

38.     On August 12, 2013, Ms. Mitchell saw some men wandering around the Property. She confronted them and they told her they were from an asbestos removal company. She asked for their paperwork and they refused to provide it. Ms. Mitchell called the City of Dayton Police who arrived after the men had left.

39.     A few hours later, the men arrived again to begin work on asbestos abatement.

40.     On August 13, 2013, Ms. Mitchell saw the same men placing equipment on the front porch of the Property. She requested that they remove the equipment and leave the Property. The men refused stating that they had been instructed by Mr. Zimmer to do the demolition of the Property. Ms. Mitchell called the Dayton Police.

41.     The City of Dayton Police showed up to the Parents' Property with Mr. Zimmer. Mr. Zimmer told Ms. Mitchell she was not allowed on the Property.  Ms. Mitchell presented the mowing permit – that Mr. Zimmer signed – to the Dayton Police Officer.  Mr. Zimmer told Ms. Mitchell that he was taking the permit back and the Dayton Police Officer then instructed Ms. Mitchell to stay off the Property.

42.     After these events, Michael Johnson placed another sign stating that Ms. Mitchell was not allowed on the Property.  Asbestos abatement continued.

43.     On October 18, 2013, a crew came to the Property and started removing components of the Property such as doors and other salvageable materials.  Ms. Mitchell spoke with the crew that told her the Property was going to be torn down on October 21, 2013.

44.     Nothing happened on October 21, 2013.

45.     On October 22, 2013, the crew came back to the Property, tore out all of the wood work, the wood trim, the baseboards, doors, crown molding and knocked out windows.

46.     On October 23, 2013, the crew came back and took more woodwork and the bathroom sink.

47.     On October 24, 2013, the crew came back and removed more wood.

48.     On October 25, 2013, the crew came back and salvaged the brick from the chimney and the wood from the siding.

49.     On October 29, 2013, the crew came back and salvaged additional wood siding.

50.     On or about November 4, 2013, the Property was torn down.

## COUNT I
### (Inverse Condemnation)

51.     Plaintiff hereby incorporates the allegations of ¶¶1 through 50 by reference into this paragraph as if they were fully re-written herein.

8

52.     There is no procedural mechanism by which Ms. Mitchell may challenge the Nuisance Order by seeking that a court take evidence and determine in the first instance as a matter of fact and law whether the Property constitutes a public nuisance.

53.     The Dayton Public Nuisance Ordinance, § 152.01, et seq., fails to provide for a de novo review in the Court of Common Pleas of constitutional questions, such as whether property actually constitutes a public nuisance so as to bar compensation for taking the property.

54.     Dayton demolished the Property on or about November 4, 2013.  Because Dayton has made the administrative decision that the Property was a public nuisance, it does not intend to pay reasonable compensation for taking the Property.

55.     The Property was not, in fact, a public nuisance at the time the Nuisance Order was issued.

56.     Dayton has deprived Ms. Mitchell of her constitutional right to reasonable compensation.

57.     Pursuant to R.C. 163.01, et seq. Ms. Mitchell is entitled to the payment of reasonable compensation for the Property as a result of Dayton taking and demolishing the Property.

## COUNT II
### (Writ of Mandamus)

58.     Plaintiff hereby incorporates the allegations of ¶¶1 through 57 by reference into this paragraph as if they were fully re-written herein.

59.     Dayton demolished the Property on or about November 4, 2013.  Because Dayton has made the administrative decision that the Property was a public nuisance, it does not intend to pay reasonable compensation for taking the Property.

60.    The Property was not, in fact, a public nuisance at the time the Nuisance Order was issued.

61.    Dayton deprived Ms. Mitchell of her constitutional right to reasonable compensation.

62.    Ms. Mitchell is entitled to a writ of mandamus issued to Dayton compelling Dayton to institute appropriate proceedings under R.C. 163.01, et seq.

## COUNT III
### (Declaratory Judgment)

63.    Plaintiff hereby incorporates the allegations of ¶¶1 through 62 by reference into this paragraph as if they were fully re-written herein.

63.    The Dayton Public Nuisance Ordinance, § 152.01, et seq., purports to provide a procedure by which Dayton may make administrative determinations of public nuisances within its jurisdiction.

64.    Determinations of public nuisances implicate constitutional issues, under both the Ohio Constitution and the United States Constitution, particularly in the context of determining when a taking of property has occurred.

65.    Administrative agencies are not competent to determine constitutional questions.

66.    Accordingly, the Dayton Public Nuisance Ordinance must provide for de novo review of public nuisance determinations by the Court of Common Pleas when the constitutional question of a taking is at issue.

67.    The Dayton Public Nuisance Ordinance fails to provide for de novo review of public nuisance determinations by the Court of Common Pleas when the constitutional question of a taking is at issue.

68.     Plaintiffs are entitled to a declaratory judgment that the Dayton Public Nuisance Ordinance is unconstitutional for failure to provide for de novo review of public nuisance determinations by the Court of Common Pleas when the constitutional question of a taking is at issue.

## COUNT IV
### (42 U.S.C. §1983)

69.     Plaintiff hereby incorporates the allegations of ¶¶1 through 68 by reference into this paragraph as if they were fully re-written herein.

70.     Jack Syx, Michael Johnson, and Officer John Does, under color of state law and without privilege to do so, deprived Ms. Mitchell of her rights secured by Fifth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of Ohio.

71.     As a result of the conduct of Jack Syx, Michael Johnson, and Officer John Does, Ms. Mitchell has been damaged.

## COUNT V
### (42 U.S.C. §1983)

72.     Plaintiff hereby incorporates the allegations of ¶¶1 through 71 by reference into this paragraph as if they were fully re-written herein.

73.     Upon information and belief, Dayton failed to maintain a proper system for training its housing inspectors and its police officers, including Jack Syx, Michael Johnson and the John Doe Officers, which failure amounts to a deliberate indifference to the rights of Ms. Mitchell, and which deprived Ms. Mitchell of her rights secured by the Fifth and Fourteenth Amendments the Constitution of the United States and the laws of the State of Ohio.

74.     As a result of the conduct of Dayton, Ms. Mitchell has been damaged.

11

WHEREFORE, Plaintiff Katherine Mitchell demands judgment in her favor and against Defendant, City of Dayton, as follows:

1. On Count I, for money damages in excess of $25,000.00, plus interest;

2. On Count II, for issuance of a writ of mandamus compelling the City of Dayton to institute appropriation proceedings, pursuant to R.C. 163.01, et seq., against Plaintiffs;

3. On Count III, for a declaratory judgment hat the Dayton Public Nuisance Ordinance is unconstitutional for failure to provide for de novo review of public nuisance determinations by the Court of Common Pleas when the constitutional question of a taking is at issue;

4. On Count IV, for money damages in excess of $25,000.00, plus interest;

5. For punitive damages;

6. For her attorney fees and costs;

7. For prejudgment and post-judgment interest;

8. For all other and further relief to which Plaintiff is entitled.

/s/ Christine M. Cooper
Christine M. Cooper (#0079160)
Chad D. Cooper (#0074322)
Thomas W. Kendo, Jr. (#0058548)
KENDO, ALEXANDER, COOPER & ENGEL LLP
7925 Paragon Road
Dayton, OH 45459
Telephone: 937.433.4090
Facsimile: 937.433.1510
Email: cmcooper@kacelawllp.com

Attorneys for Plaintiff, Katherine Mitchell

**JURY DEMAND**

Plaintiff hereby requests a jury on all issues and claims triable thereto.

/s/ Christine M. Cooper
Christine M. Cooper

12



# Exhibit A

SN-10049816                City of Dayton, Ohio        SE-15-2 WALNUT HILLS-EAST  M
72780                   Department of Building Services
                        Housing Inspection Division
            371 West Second Street, PO Box 22, Dayton, Ohio  45402-    Date:  03/16/12
                                                                       Page:     1

        Addressee:
        KATHERINE MITCHELL
        15 ILLNOIS AVE
        DAYTON, OH  45410

Subject Address:  22  ILLINOIS AVENUE
                  DAYTON, OH  45410
BPIO Number:      R72-34-10-36-1
Lot Number:       20771(PART)

                        STRUCTURAL NUISANCE LEGAL ORDER

        The subject premises to which you own or have an interest in has been
        inspected pursuant to the City of Dayton Revised Code of General
        Ordinances (R.C.G.O.) Section 152.04 pertaining to the abatement of
        Public Nuisances, and has been declared a public nuisance, as Defined
        in R.C.G.O.  Section 152.04 E.

        You are hereby ordered to abate the public nuisance, by either
        rehabilitation or by removal of the building, structure or nuisance.  If
        you fail to abate the public nuisance, the City will abate the public
        nuisance by demolition and all costs of abatement will be billed to you.
        If you fail to pay the bill, the costs will be assessed against the
        property, or the City may commence a civil action against you to recover
        the costs.

        A SPECIAL SERVICE PERMIT AND INSPECTION are required for all structural
        nuisances.  At the completion of the special service inspection the
        owner(s) will be advised of permits required that shall require
        additional repairs or improvements in addition to the nuisance legal
        order.  Permits are required before doing any repair or demolition work.
        Permits must be finaled upon the completion of approved repairs or
        improvements.

        You have fifteen (15) days after receipt of this notice in which to
        obtain a nuisance rehab permit.  If a nuisance rehab permit is obtained,
        all rehabilitation work must be completed within the ninty (90) day
        permit period.  If a wrecking permit is obtained, all wrecking must be
        completed within a thirty (30) day permit period (or such additional
        time as the Manager of Housing Inspection deems necessary.)

        It is illegal for any person to occupy, or allow another to occupy, a
        structure that has been declared a public nuisance.

        It is illegal for any person, including the owner, to enter the premises
        of a public nuisance without written consent of the  Manager of Housing
        Inspection Division.  For additional information please call
        937-333-3977.

        No further notice regarding this matter will be given to you.



```
SN-10049816        72780
Subject Address:  22  ILLINOIS AVENUE                    Date:  03/16/12
BPIO Number:      R72-34-10-36-1                         Page:     2
```

### R.C.G.O. SECTIONS VIOLATED

**SECTION VIOLATED:** 93.16 DECLARATION OF NUISANCE AND ORDERS; ALL DANGEROUS DWELLINGS OR PARTS THEREOF WITHIN THE TERMS OF R.C.G.O. 93.15 ARE DECLARED TO BE PUBLIC NUISANCES, AND SHALL BE VACATED AND REPAIRED AS PROVIDED IN THIS CHAPTER

**Date of Violation:** On or about 03/16/12 at 11:12 AM

**Location:** EXTERIOR MAIN STRUCTURE THROUGHOUT

**Violation:  328528** THIS PROPERTY IS IN THE NUISANCE ABATEMENT PROGRAM. VIOLATIONS ARE TOO NUMEROUS TO LIST. OBTAIN A SPECIAL SERVICES INSPECTION FROM THE DIVISION OF BUILDING INSPECTION PRIOR TO OBTAINING A REHAB PERMIT. FOR INFORMATION ABOUT THE NUISANCE ABATEMENT PROGRAM, CALL (937) 333-3977.

---

**SECTION VIOLATED:** 152.01 PUBLIC NUISANCE (STRUCTURAL)

**Date of Violation:** On or about 03/16/12 at 11:12 AM

**Location:** EXTERIOR MAIN STRUCTURE THROUGHOUT

**Violation:  328526** DOOR(S) DAMAGED AND LOCKSET BROKEN OR MISSING, STRUCTURE IS OPEN AND CANNOT BE SECURED

---

**SECTION VIOLATED:** 152.01 PUBLIC NUISANCE (STRUCTURAL)

**Date of Violation:** On or about 03/16/12 at 11:16 AM

**Location:** EXTERIOR MAIN STRUCTURE THROUGHOUT

**Violation:  328530** FOUNDATION DOES NOT PROPERLY SUPPORT STRUCTURE

---

**SECTION VIOLATED:** 152.01 PUBLIC NUISANCE (STRUCTURAL)

**Date of Violation:** On or about 03/16/12 at 11:18 AM

**Location:** EXTERIOR MAIN STRUCTURE THROUGHOUT

**Violation:  328533** RAINGUTTER AND DOWNSPOUTS NOT PROVIDED



```
SN-10049816          72780                              Date:  03/16/12
Subject Address:  22  ILLINOIS AVENUE                   Page:     3
BPIO Number:      R72-34-10-36-1
```



SN-10049816        72780
Subject Address:  22  ILLINOIS AVENUE                          Date:  03/16/12
BPIO Number:      R72-34-10-36-1                              Page:     4


SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:20 AM

Location:                EXTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328535       WINDOW GLASS BROKEN AND/OR CRACKED


SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:12 AM

Location:                EXTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328527       SPECIAL SERVICE INSPECTION REQUIRED


SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:17 AM

Location:                EXTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328532       PORCH SUPPORT POST(S) MISSING OR DAMAGED TO THE
                         EXTENT THE MEMBER DOES NOT PROPERLY SUPPORT THE LOAD


SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:21 AM

Location:                EXTERIOR MAIN STRUCTURE FRONT PORCH

Violation:  328536       STAIRWAY (CONCRETE) CRACKED, DETERIORATED AND/OR
                         PARTS MISSING CREATING AN UNSAFE CONDITION


SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:16 AM

Location:                EXTERIOR MAIN STRUCTURE THROUGHOUT



```
SN-10049816          72780                              Date:  03/16/12
Subject Address:  22  ILLINOIS AVENUE                   Page:     5
BPIO Number:      R72-34-10-36-1

Violation:  328529      FASCIA & SOFFIT BOARDS DAMAGED OR PARTS MISSING
```



```
SN-10049816        72780                                      Date:  03/16/12
Subject Address:   22  ILLINOIS AVENUE                        Page:     6
BPIO Number:       R72-34-10-36-1
```

SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:19 AM

Location:                EXTERIOR MAIN STRUCTURE THROUGHOUT

Violation: 328534        SIDING (WOOD, METAL, ALUMINUM AND OR VINYL) DAMAGED,
                         REMOVED OR PARTS MISSING

---

SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:17 AM

Location:                EXTERIOR MAIN STRUCTURE THROUGHOUT

Violation: 328531        PAINTED SURFACES PEELING

---

SECTION VIOLATED:        93.33 STRUCTURAL SOUNDNESS AND MAINTENANCE OF
                         DWELLINGS. SUB-SECTION (I) AND/OR 93.331 UNOCCUPIED
                         OR VACANT DWELLINGS. SUB-SECTION (I)

Date of Violation:       On or about 03/16/12 at 11:29 AM

Location:                INTERIOR MAIN STRUCTURE THROUGHOUT

Violation: 328544        JOIST DAMAGED AND/OR DETERIORATED.

---

SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:27 AM

Location:                INTERIOR MAIN STRUCTURE THROUGHOUT

Violation: 328539        FLOOR(S) AND/OR WALL(S) AND/OR CEILING PARTS DAMAGED
                         DETERIORATED AND/OR PARTS MISSING

---

SECTION VIOLATED:        152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:       On or about 03/16/12 at 11:22 AM

Location:                INTERIOR MAIN STRUCTURE THROUGHOUT



```
SN-10049816           72780                           Date:  03/16/12
Subject Address:  22  ILLINOIS AVENUE                 Page:    8
BPIO Number:      R72-34-10-36-1

Location:                 INTERIOR MAIN STRUCTURE THROUGHOUT
```



```
SN-10049816        72780                              Date:  03/16/12
Subject Address:  22  ILLINOIS AVENUE                 Page:     9
BPIO Number:      R72-34-10-36-1
```

Violation:  328543     HEATING SYSTEM DUCT WORK DAMAGED OR MISSING

---

SECTION VIOLATED:     152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:    On or about 03/16/12 at 11:27 AM

Location:             INTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328540    ELECTRICAL COMPONENTS MISSING RENDERING THE SYSTEM
                      INOPERABLE

---

SECTION VIOLATED:     152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:    On or about 03/16/12 at 11:28 AM

Location:             INTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328541    ELECTRICAL WIRES EXPOSED

---

SECTION VIOLATED:     152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:    On or about 03/16/12 at 11:30 AM

Location:             INTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328547    SMOKE DETECTOR(S) NOT PROVIDED

---

SECTION VIOLATED:     152.01 PUBLIC NUISANCE (STRUCTURAL)

Date of Violation:    On or about 03/16/12 at 11:28 AM

Location:             INTERIOR MAIN STRUCTURE THROUGHOUT

Violation:  328542    FURNACE REMOVED

---



SN-10049816        72780                                           Date:  03/16/12
Subject Address:   22  ILLINOIS AVENUE                             Page:  10
BPIO Number:       R72-34-10-36-1

APPEALS PROCEDURES AND NOTICE OF PENALTIES

You may appeal this finding of a public nuisance by making a
demand in writing within fifteen (15) days after receipt of
this notice, to the Manager of Housing Inspection, for a
hearing on the question of whether in fact a public nuisance
exists as defined in the Revised Code of General Ordinances
Section 152.01E.

Failure or refusal to comply with an order to abate a public
nuisance is up to $500 in fines and/or up to 60 Days
incarceration. RCGO 152.123(B)

Available by Phone: Monday through Friday        JACK SYX 64
8:00 - 9:00 AM                                   Housing Inspection Division
(937)333-3922                                    Department of Building Services


                                                 Nuisance Abatement Program Specialist
                                                 Housing Inspection Division
                                                 Department of Building Services

## Exhibit B



# CERTIFICATION FOR DEMOLITION
## OF A PUBLIC NUISANCE

PROPERTY ADDRESS(ES) _22 ILLINOIS_ ZIP CODE _45410_
LOT NO _Z0771 (PART)_ BPI _R72-34-10-36-31_
LOT SIZE _60_ X _140_ = LOT AREA _8400_ SQ FT

I. <u>MAIN STRUCTURE TO BE DEMOLISHED?</u> YES or NO STR TYPE _Frame/s_
Width _30_ X Length _50_ Total Area _1500_ SQ FT
Height _22_ Ft _____ Number of floors above grade _1.5_
Structure is built on Slab _____ Crawl Space _____ Basement _X_
Does the structure have a Full Attic? _____ Partial Attic? _X_

II. <u>ACCESSORY STR TO BE DEMOLISHED?</u> YES or NO STR TYPE FRAME _____
Width _____ X Length _____ = Total Area _____
Height _____ Ft _____ Number of floors above grade _____
Structure is built on Slab yes/_____ Crawl Space _____ Basement

<u>ACCESSORY STR TO BE DEMOLISHED?</u> YES or NO STR TYPE _____
Width _____ X Length _____ = Total Area _____
Height _____ Ft _____ Number of floors above grade _____ SQ FT
Structure is built on Slab _____ Crawl Space _____ Basement _____

III. Does the exterior of the structure have an extraordinary amount
of Trash, Debris, Litter, Appliances, Bulk Waste and/or
Furniture? YES or NO Estimated Cubic Yards _____

IV. Is water meter present inside? YES or NO
Is gas meter present inside? YES or NO
Is electric service cut out? YES or NO

V. I CERTIFY THE ABOVE MENTIONED STRUCTURE(S) FOR DEMOLITION BASED
UPON AN INSPECTION WITH PHOTOS DATED _3-16-13_.
I WILL/WILL NOT NEED TO GO INSIDE THE PREMISES BEFORE DEMOLITION
BEGINS.

IS THE STRUCTURE SO SUBSTANTIALLY FIRE DAMAGED OR ALREADY
COLLAPSED THAT GOING INSIDE IS NOT POSSIBLE? YES or NO

_____ INSPECTOR'S SIGNATURES _____ AREA SUPERVISOR'S SIGNATURE

DATE OF CERTIFICATION INSPECTION _3-16-13_

DATE OF PRE-DEMOLITION INSPECTION WITH CONTRACTOR NO DATE NEEDED

VI CHANGE IN OWNERSHIP YES ☐ NO ☒

VII PERMIT BEEN PULLED YES ☐ NO ☒ AS OF 3-14-13

HUD Form NAB 2008-03

PROPERTY ADDRESS   22 ILLINOIS

JUSTIFICATION FOR CERTIFICATION:   INSPECTION MADE WITH
INSPECTOR STEPHAINE HALFACRE AND MYSELF CONCURED
SAID PROPERTY AT 22 ILLINOIS          IS A NUISANCE

① DOORS DAMAGE
② FOUNDATION DETERIORATED
③ RAIN GUTTERS & DOWNS
④ WINDOW GLASS Broken
⑤ PORCH STEPS DETERIORATED
⑥ PORCH POST DETERIORATED
⑦ SIDING DAMAGE
⑧ PAINT SURFACE

⑨ Ceiling & WALLS PARTS missing
⑩ Joist DAMAGE
⑪ FLOORS & WALLS DETERIORATED
⑫ BATHROOM (complet.) NOT PROVIDED
⑬ KITCHEN (complete) NOT PROVIDED
⑭ WATER HEATER NOT PROVIDED
⑮ FURNACE REMOVED
⑯ Electrical PARTS Pcs missing.

TAX SUMMARY CURRENTLY DUE: 6,709.18
      SLAB AT REAR 24×24

LOT CLEARANCE PLAN

| STREET |
| SIDEWALK |

☐ SEE ATTACHED PLOT MAP
COMMENTS

## Exhibit C

87286



# HART ENVIRONMENTAL RESOURCES

262 Hedge Dr.   Springfield, OH 45504   (937) 325-8777   (937) 324-0288 FAX

## ASBESTOS INSPECTION REPORT

22 Illinois Ave.
Dayton, OH 45410



### PREPARED FOR:

Mr. Dennis Zimmer
City of Dayton
Building Services
Nuisance Abatement & Rehabilitation Supervisor
371 W. 2nd St., Room 324
Dayton, OH 45402
937-333-3982

### PREPARED BY:

Lynda M. Hart
Asbestos Hazards Evaluation Specialist
Ohio #ES-32558
April 6, 2013



**HART ENVIRONMENTAL RESOURCES**

262 Hedge Dr.   Springfield, OH 45504   (937) 325-8777   (937) 324-0288 FAX

April 6, 2013

Mr. Dennis Zimmer
City of Dayton
Building Services
Nuisance Abatement & Rehabilitation Supervisor
371 W. 2nd St., Room 324
Dayton, OH 45402

Re:     Asbestos Inspection
        22 Illinois Ave.
        Dayton, Ohio 45410

Dear Mr. Zimmer,

Hart Environmental Resources prepared this report, under contract with the City of Dayton, Ohio, for the asbestos inspection conducted at 22 Illinois Ave., Dayton, OH. The inspection, conducted on March 29, 2013, was completed utilizing applicable Federal and Ohio State regulations pertaining to asbestos: Federal OSHA (29 CFR 2010.1001and 29 CFR 2026.1101), EPA (40 CFR Part 61), and TSCA Title II AHERA/ASHARA (40 CFR Part 763) Asbestos Regulations. The findings in this report are consistent with accepted principles and practice established and prescribed by the EPA and AHERA.

All accessible areas of the home, at 22 Illinois Ave., were inspected physically, functional space by functional space, and homogeneous area by homogeneous area to determine the presence of asbestos-containing materials. Suspect materials that may be present inside wall cavities, electrical wiring or which were otherwise inaccessible were not included in the scope of this inspection. Core samples of friable and non-friable suspect asbestos-containing materials were collected. A site diagram, with the location of each sample, was made. The bulk samples were placed in zip-lock bags, sealed, and labeled with an identifying code. The samples, along with the chain-of-custody, were then submitted to the laboratory, Environmental Hazards Services, to be analyzed for asbestos content.

The home is a two-story structure, with a below ground level. The exterior has been finished with wood and transite. The transite on the front of the home has been removed and is laying in piles on the front porch. The interior walls and ceilings are finished with plaster, most of which has been removed. Older, wood windows have been installed in the home. A hot-water boiler, supplied heat to the structure. The pitched roof is covered with bituminous, asphalt shingles.

Hart Environmental Resources identified sixteen (16) suspect asbestos-containing materials in the accessible areas of the structure.

## Analytical Results

| HER Sample #<br>Lab Sample # | Amount | Layers | Description/Sample Location | Condition | PLM Result (% Asbestos) |
|---|---|---|---|---|---|
| 22I-1<br>13-04-0-001 | - | 1 | Window Glazing, Living Room Wall A | Friable | None Detected |
| 22I-2<br>13-04-0-002 | - | 2 | Wall Plaster, Bedroom 2, Homogeneous, Wall C | Non-friable | None Detected |
| 22I-3<br>13-04-0-003 | - | 2 | Wall Plaster, 2nd Floor Stairway, Homogeneous, Wall B | Non-friable | None Detected |
| 22I-4<br>13-04-0-004 | - | 2 | Wall Plaster, 2nd Floor Stairway, Homogeneous, Wall D | Non-friable | None Detected |
| 22I-5<br>13-04-0-005 | - | 1 | Window Glazing, Living Room Wall D | Friable | None Detected |
| 22I-6<br>13-04-0-006A | - | 1 | Brown Vinyl Floor Tile, 2nd Floor Bathroom | Non-friable | None Detected |
| 22I-6<br>13-04-0-006B | - | 1 | Brown Vinyl Floor Tile Mastic, 2nd Floor Bathroom | Non-friable | None Detected |
| 22I-7<br>13-04-0-007A | - | 1 | Brown Vinyl Floor Tile, 2nd Floor Bathroom | Non-friable | None Detected |
| 22I-7<br>13-04-0-007B | - | 1 | Brown Vinyl Floor Tile Mastic, 2nd Floor Bathroom | Non-friable | None Detected |
| 22I-8<br>13-04-0-008 | - | 1 | Roofing Shingle | Non-friable | None Detected |
| 22I-9<br>13-04-0-009 | - | 1 | Roofing Shingle | Non-friable | None Detected |
| 22I-10<br>13-04-0-010A | - | 1 | Blue Vinyl Linoleum, 2nd Floor Room #4 | Non-friable | None Detected |
| 22I-10<br>13-04-0-010B | - | 1 | Blue Vinyl Linoleum Mastic, 2nd Floor Room #4 | Non-friable | None Detected |
| 22I-11<br>13-04-0-011A | - | 1 | Blue Vinyl Linoleum, 2nd Floor Room #4 | Non-friable | None Detected |
| 22I-11<br>13-04-0-011B | - | 1 | Blue Vinyl Linoleum Mastic, 2nd Floor Room #4 | Non-friable | None Detected |
| 22I-12<br>13-04-0-012A | - | 1 | Brown Vinyl Linoleum, Kitchen | Non-friable | None Detected |
| 22I-12<br>13-04-0-012B | - | 1 | Brown Vinyl Linoleum Mastic, Kitchen | Non-friable | None Detected |
| 22I-13<br>13-04-0-013A | - | 1 | Brown Vinyl Linoleum, Kitchen | Non-friable | None Detected |
| 22I-13<br>13-04-0-013B | - | 1 | Brown Vinyl Linoleum Mastic, Kitchen | Non-friable | None Detected |
| 22I-14<br>13-04-0-014 | 742 Sq. Ft. | 1 | Pipe Insulation, Basement Floor | Friable | 10% Chrysotile Asbestos |
| 22I-15<br>13-04-0-015 | See Above | 1 | Pipe Insulation, Basement Floor | Friable | 10% Chrysotile Asbestos |
| 22I-16<br>13-04-0-016 | 1738 Sq. Ft. | 1 | Transite, Front Porch And Exterior of Home | Non-friable | 20% Chrysotile Asbestos |

1

## Discussion and Recommendations

Sixteen (16) bulk samples of suspect asbestos-containing materials were collected in the accessible areas of the structure. All plaster was homogenous throughout the home. Per current EPA regulations, Category I Non-Friable materials, including bituminous roofing materials, resilient floor coverings and gaskets do not need to be removed prior to the demolition of homes, as long as it does not become friable during the demolition process.

The analytical results found the following items to contain greater than 1% asbestos fibers:

- White, fibrous pipe insulation, Basement Floor (Ground Debris)
- White, fibrous transite, Exterior Of Home

Confirmed or assumed asbestos-containing materials, which will be disturbed during demolition activities, are regulated under current Federal and State regulations. Hart Environmental Resources recommends the removal of these materials by a licensed asbestos abatement contractor. It is also strongly recommended that the specifications for the removal program be developed by a licensed Asbestos Project Designer to ensure that all regulatory requirements are satisfied. The work should be properly documented in the event of future litigation.

An Ohio EPA Notification of Demolition and Renovation form must be completed and submitted to the Regional Air Pollution Control Agency (RAPCA) at least ten working days prior to the commencement of any abatement or demolition activity. The amount, type and condition of the asbestos-containing materials found in this inspection, as well as the materials assumed to be asbestos-containing, must be noted on the form. The name and certification number of the asbestos inspector, Douglas E. Hart, #ES35377, must be included.

Hart Environmental Resources estimates the cost associated with the removal of the confirmed asbestos-containing materials to be as follows:

| Material | Est. Qty. | Est. Unit Cost | Est. Cost |
|---|---|---|---|
| Pipe insulation – ground debris | 742 Sq. Ft. | $5/Ln. Ft. | $3,710 |
| White, fibrous transite | 1788 Sq. Ft. | $2/Sq. Ft. | $3,576 |
| | | Total | $7,286 |

Estimated costs are based on local, current prevailing wages and do not include costs for planning, permitting, specification development, contractor oversight or air monitoring.

Additional suspect asbestos-containing materials may be hidden in uninspected or inaccessible areas, such as pipe chases, duct chases or wall cavities. If any additional suspect materials are encountered in these locations, the material should be left undisturbed and kept intact until they can be inspected and sampled by a licensed Asbestos Abatement Evaluation Specialist. Hart Environmental Resources will be happy to return to the site if additional suspect materials are encountered during the demolition activity. The other options, is to assume that the material is asbestos-containing and have it abated as such.

This report, and the supporting data, findings, conclusions, opinions, and the recommendations it contains, represents the result of Hart Environmental Resources' efforts on behalf of the City of Dayton. This report is not an asbestos abatement specification and should not be used for specifying removal methods or techniques. The results, assessments, conclusions and recommendations stated in this report are factually representative of the conditions and circumstances observed at this location on the date of the inspection. We cannot assume responsibility for any change in conditions or circumstances that occurred after the inspection. This report and its findings and recommendations, if implemented by the City of Dayton, should not be construed as an assurance or implied warranty for the continuing safety, performance, or cost-effectiveness of any equipment, product, system, facility, procedure, or policy discussed or recommended herein.

Recommendations are based on the professional judgment of the inspector and the results of the samples collected and analyzed. Hart Environmental Resources makes no warranty, expressed or implied, and accepts no liability for the presence or absence of asbestos or other hazardous materials in or on building products, materials or areas. Hart Environmental Resources assumes no responsibility for the cost of repairing, replacing or removing any undiscovered or unreported condition or defect, or any future condition or defect.

Based on the findings of this survey, Hart Environmental Resources recommends the following:

- **Maintain copies of the information from this asbestos inspection at the site during the demolition operations.** This information should also be maintained by the City of Dayton in an off-site file to document property completion of the inspection prior to the building demolition.

- **Asbestos-containing materials should not be disturbed or removed except by properly trained, certified and equipped personnel in accordance with the requirements of an asbestos abatement specification developed for this project.**

- **Air monitoring should be performed during any work that disturbs the integrity of identified asbestos-containing materials, in accordance with the OSHA regulations.** Air monitoring should be performed by a certified asbestos hazards evaluation specialist or a certified industrial hygienist.

- **An Ohio EPA Notification of Demolition and Renovation form should be completed and submitted to the Regional Air Pollution Control Agency (RAPCA) at least ten working days prior to the start of any abatement or demolition activity.** This form should list the amount of Category I Non-Friable materials, which will not be removed, as well as the amount of regulated asbestos-containing materials, which will be removed prior to the demolition activity.

3

If you have any questions or concerns with this inspection please do no hesitate to contact me.

Sincerely,

*Lynda M. Hart*

Lynda M. Hart, REM
President
*Registered Environmental Manager, #7938*
*Asbestos Hazards Evaluation Specialist, State of Ohio, #ES32558*

Attachments

| | |
|---|---|
| Attachment 1 | Site Location Map |
| Attachment 2 | Site Inspection Work Sheet |
| Attachment 3 | Photographs |
| Attachment 4 | Laboratory Results |
| Attachment 5 | Work Order |

ATTACHMENT 1

SITE LOCATION MAP

22 Illinois Ave, Dayton, OH 45410 Directions, Location and Map | MapQuest

Page 1 of 1



Map of:
**22 Illinois Ave**
Dayton, OH 45410-2032

Notes
Mr. Dennis Zimmer
City of Dayton
Building Services
Nuisance Abatement & Rehabilitation Supervisor
371 W. 2nd St., Room 324
Dayton, OH 45402
937-333-3982



©2013 MapQuest, Inc. Use of directions and maps is subject to the MapQuest Terms of Use. We make no guarantee of the accuracy of their content, road conditions or route usability.
You assume all risk of use. View Terms of Use

**BOOK TRAVEL** with **mapquest**     877-577-5766     

# ATTACHMENT 2

## SITE INSPECTION WORK SHEET

**Hart Environmental Resources**

Site: **22 Illinois** City: **Dayton** State: **OH** Zip: _____

Asbestos Inspection Work Sheet

**Structure**

Levels: 1 ___ 2 ✓ 3 ___ Other ___
Exterior: Wood ✓ Vinyl ___ Aluminum ___ Transite ✓ Brick ___ Other ___
Foundation: Slab ___ Crawl ___ Basement ___
Interior Walls: Drywall ___ Plaster ___ Paneling ___ Other ___
Flooring: Linoleum/Vinyl **Enc. Porch** Linoleum/Vinyl **Kitchen** Linoleum/Vinyl **Attic Steps**
Windows: Wood ✓ Vinyl ___ Metal ___ Other ___ Number of Windows **28**
Heating: GFA ___ Hot Water ✓ Other ___
Roofing: Asphalt Shingles ✓ Transite Shingles ___ Metal ___ Other ___
Duct Work: Yes / No Seam Tape: Yes / No

**1st Floor**
Barn 12'8"
Living 17'1"
Barn
Hall 1'1" Dining
Barn2 1'4" Kitchen 1'6"
Enc. Porch
4 wood windows
Ceiling Height 9'

**2nd Floor**
① 8' ② ③
Barn 11'5" 10'
Barn
Hall 7'4"
④ ⑤ ⑥ 6'
Stairs
Ceiling Height 7'9"

**Basement**
4 wood windows
29'
17'6" stair 10'11"
Ceiling Height 8'

Page 1 of 2

**Hart Environmental Resources**

**Asbestos Inspection Work Sheet**

Site 22 Illinois    City Dayton    State OH    Zip _____

| Sample # | Material | Room Location | Wall | Color | Condition * | Quantity |
|---|---|---|---|---|---|---|
| 22 I 1 | Window Glzg | Lvg Rm | A | | | |
| 22 I 2 | Wall Plstr | Bdrm 2 | C | | | |
| 22 I 3 | Wall Plstr | 2nd floor stair B | wt/tan | | |
| 22 I 4 | Wall Plstr | 2nd floor stair 3 D | wt/tan | | |
| 22 I 5 | Window Glzg | Bdrm 1 D | wt/tan | | |
| 22 I 6 | Flooring | 2nd flr bath | | | |
| 22 I 7 | Flooring | 2nd flr bath | brown | | |
| 22 I 8 | Roof Shingle | | brown | | |
| 22 I 9 | Roof Shingle | | brown | | |
| 22 I 10 | Flooring | | brown | | |
| 22 I 11 | Flooring | 2nd floor #4 | green | | |
| 22 I 12 | Flooring | 2nd floor #4 | green | | |
| 22 I 13 | Flooring | Kitchen | brown-brick | | |
| 22 I 14 | Insulation Pipe | Kitchen | brown-brick | | |
| 22 I 15 | Pipe Insulation > Ground Debris | Basement | P/Fr | |
| 22 I 16 | Transite Siding | exterior | white | | |

* G = Good    F = Fair    P = Poor    FR = Friable    NF = NonFriable

※ Finished 2nd floor

Notes: No garage

96% of wall plstr removed from home

Hot water boiler removed + radiators removed

Front porch transite removed & is laying on porch as ground debris

100 sq ft plus picture

Inspector    Doug Hart    Dong Hart    Certification # ES-35377    Date 3/29/13

Page 2 of 2

ATTACHMENT 3

PHOTOGRAPHS



Photo 2: Wall Plaster (22I-2) Bedroom 2. No Asbestos Detected.

Photo 4: Wall Plaster (22I-4) 2ⁿᵈ Floor Stairway. No Asbestos Detected.

Photo 1: Window Glazing (22I-1) Living Room. No Asbestos Detected.

Photo 3: Wall Plaster (22I-3) 1ˢᵗ Floor Stairway. No Asbestos Detected.



Photo 5: Window Glazing (221-5) Bedroom 1. No Asbestos Detected.



Photo 6: Brown Vinyl Floor Tile (221-6) 2ⁿᵈ Floor Bathroom. No Asbestos Detected.



Photo 7: Brown Vinyl Floor Tile (221-7) 2ⁿᵈ Floor Bathroom. No Asbestos Detected.

Photo 8: Roofing Shingle (221-8). No Asbestos Detected.



Photo 10: Blue Vinyl Linoleum (221-10) 2nd Floor Room #4, No Asbestos Detected.

Photo 12: Brown Vinyl Linoleum (221-12) Kitchen. No Asbestos Detected.



Photo 9: Roofing Shingle (221-9). No Asbestos Detected.

Photo 11: Blue Vinyl Linoleum (221-11) 2nd Floor Room #4, No Asbestos Detected.



Photo 14: Pipe Insulation (22I-14) Basement Floor, 10% Chrysotile Asbestos Detected.



Photo 16: Pipe Insulation (22I-15) Basement Floor, 10% Chrysotile Asbestos Detected.



Photo 13: Brown Vinyl Linoleum (22I-13) Kitchen. No Asbestos Detected.



Photo 15: Pipe Insulation, Basement Floor.



Photo 18: Transite Laying On Front Porch.



Photo 20: Exterior Photo Of Transite Siding.

Photo 17: Transite (#20-16) Front Porch. 20% Chrysotile Asbestos Detected.



Photo 19: Exterior Photo Of Transite Siding.



Photo 21: Basement Floor Ground Debris.

Photo 22: Basement Floor Ground Debris.

Photo 23: Interior Of Home, Most Of Plaster Removed.

Photo 24: Interior Of Home, Most Of Plaster Removed.

**ATTACHMENT 4**

**LABORATORY RESULTS**



**EHS**
**Laboratories®**

Environmental Hazards Services, L.L.C.
7469 Whitepine Rd
Richmond, VA 23237
Telephone: 800.347.4010

Client:  Hart Environmental Resources
262 Hedge Drive
Springfield, OH 45504

Project/Test Address: City of Dayton; 22 Illinois

**Asbestos Bulk
Analysis Report**

Report Number: 13-04-00146

Received Date:  04/01/2013
Analyzed Date:  04/01/2013
Reported Date:  04/02/2013

Client Number:
36-5620

Fax Number:
937-324-0288

# Laboratory Results

| Lab Sample Number | Client Sample Number | Layer Type | Lab Gross Description | Asbestos | Other Materials |
|---|---|---|---|---|---|
| 13-04-00146-001 | 22 I-1 | | White Brittle; Homogeneous | NAD | 100% Non-Fibrous |
| 13-04-00146-002 | 22 I-2 | | Gray Granular; Tan Brittle; Inhomogeneous | NAD | 2% Hair 98% Non-Fibrous |
| 13-04-00146-003 | 22 I-3 | | Gray Granular; White Brittle; Inhomogeneous | NAD | 2% Hair 98% Non-Fibrous |
| 13-04-00146-004 | 22 I-4 | | Gray Granular; White Brittle; Inhomogeneous | NAD | 10% Cellulose 2% Hair 88% Non-Fibrous |
| 13-04-00146-005 | 22 I-5 | | Tan Brittle; Homogeneous | NAD | 100% Non-Fibrous |

# Environmental Hazards Services, L.L.C

Client Number: 36-5620
Project/Test Address: City of Dayton; 22 Illinois

Report Number: 13-04-00146

| Lab Sample Number | Client Sample Number | Layer Type | Lab Gross Description | Asbestos | Other Materials |
|---|---|---|---|---|---|
| 13-04-00146-006 | 22 I-6 | | Green Vinyl; Brown Fibrous; Paint-Like; Inhomogeneous | NAD | 15% Cellulose 85% Non-Fibrous |
| No mastic present. | | | | | |
| 13-04-00146-007 | 22 I-7 | | Brown Vinyl; Fibrous; Inhomogeneous | NAD | 15% Cellulose 85% Non-Fibrous |
| No mastic present. | | | | | |
| 13-04-00146-008 | 22 I-8 | | Black Tar-Like; Fibrous; Tan Aggregate; Inhomogeneous | NAD | 25% Fibrous Glass 75% Non-Fibrous |
| 13-04-00146-009 | 22 I-9 | | Black Tar-Like; Fibrous; Tan Aggregate; Inhomogeneous | NAD | 25% Fibrous Glass 75% Non-Fibrous |
| 13-04-00146-010 | 22 I-10 | | Black Fibrous; Green Vinyl; Inhomogeneous | NAD | 35% Cellulose 5% Synthetic 60% Non-Fibrous |
| No mastic present. | | | | | |
| 13-04-00146-011 | 22 I-11 | | Green Vinyl; Black Fibrous; Inhomogeneous | NAD | 35% Cellulose 5% Synthetic 60% Non-Fibrous |
| No mastic present. | | | | | |
| 13-04-00146-012 | 22 I-12 | | Gray Vinyl; Homogeneous | NAD | 5% Cellulose 95% Non-Fibrous |
| No mastic present | | | | | |
| 13-04-00146-013 | 22 I-13 | | Gray Vinyl; Homogeneous | NAD | 5% Cellulose 95% Non-Fibrous |
| No mastic present | | | | | |

# Environmental Hazards Services, L.L.C.

Client Number: 36-5620
Project/Test Address: City of Dayton; 22 Illinois

Report Number: 13-04-00146

| Lab Sample Number | Client Sample Number | Layer Type | Lab Gross Description | Asbestos | Other Materials |
|---|---|---|---|---|---|
| 13-04-00146-014 | 22 I-14 | | White Powder; Homogeneous | 10% Chrysotile | 90% Non-Fibrous |
| | | | Total Asbestos: 10% | | |
| 13-04-00146-015 | 22 I-15 | | White Powder; Homogeneous | 10% Chrysotile | 90% Non-Fibrous |
| | | | Total Asbestos: 10% | | |
| 13-04-00146-016 | 22 I-16 | | White Cementitious; Homogeneous | 20% Chrysotile | 80% Non-Fibrous |
| | | | Total Asbestos: 20% | | |

QC Sample: 5-M1-1991-1
QC Blank: SRM 1866 Fiberglass
Reporting Limit: 1% Asbestos
Method: EPA Method 600/R-93/116, EPA Method 600/M4-82-020
Analyst: Araceli Enzler

Reviewed By Authorized Signatory: *Tasha Eaddy*

Tasha Eaddy
QA/QC Clerk

The condition of the samples analyzed was acceptable upon receipt per laboratory protocol unless otherwise noted on this report. Each distinct component in an inhomogeneous sample was analyzed separately and reported as a composite. Results represent the analysis of samples submitted by the client. Sample location, description, area, volume, etc., was provided by the client. This report cannot be used by the client to claim product endorsement by NVLAP or any agency of the U.S. Government. This report shall not be reproduced except in full, without the written consent of the Environmental Hazards Service, L.L.C. California Certification #2319 NY ELAP #11714 NVLAP #101882-0. All information concerning sampling location, date, and time can be found on Chain-of-Custody. Environmental Hazards Services, L.L.C. does not perform any sample collection.

Environmental Hazards Services, L.L.C. recommends reanalysis by point count (for more accurate quantification) or Transmission Electron Microscopy (TEM), (for enhanced detection capabilities) for materials regulated by EPA NESHAP (National Emission Standards for Hazardous Air Pollutants) and found to contain less than ten percent (<10%) asbestos by polarized light microscopy (PLM). Both services are available for an additional fee.

400 Point Count Analysis, where noted, performed per EPA Method 600/R-93/116 with a Reporting Limit of 0.25%.

* All California samples analyzed by Polarized Light Microscopy, EPA Method 600/M4-82-020, Dec. 1982.

LEGEND       NAD = no asbestos detected

Page 3 of 3



**Analyst Signature Page**

Environmental Hazards Services, L.L.C.
7469 Whitepine Rd
Richmond, VA 23237
Telephone: 800.347.4010

Report Number:   13-04-00146

Client:        Hart Environmental Resources
               262 Hedge Drive
               Springfield, OH 45504

Received Date:    04/01/2013
Analyzed Date:    04/01/2013
Reported Date:    04/02/2013

Client Number.   36-5620

Project/Test Address:   City of Dayton; 22 illinois

Analyst(s)

*Araceli Enzler*

Araceli Enzler

Page 1 of 1

ENVIRONMENTAL HAZARDS SERVICES, L.L.C.
7469 Whitepine Rd., Richmond, VA 23237 (804) 275-4788 (804) 275-4907 FAX

# CHAIN OF CUSTODY FORM

Company Name: Hart Environmental Resources
Address: 262 Hedge Dr.
City, State, Zip: Springfield, OH 45504
EHS Client Acct. #: [  ]620 D
Phone #: (937) 325-8777    Fax #: (937) 324-0288
E-mail: hartenv@woh.rr.com

Date: March 29 2013
Contact Name: Doug Hart
Sampler Name: Doug Hart
Project #: City of Dayton    ZZ ILLINOIS
1 Day TAT

Point count samples with Trace-5% asbestos

Particles: Total Nuisance (NIOSH 0500) _____
Respirable (NIOSH 0600) _____

13-04-00146
Due Date:
04/02/2013
(Tuesday)
AE

| Sample Number | Sample Date Time | Bulk by PLM | Comments |
|---|---|---|---|
| 22.I-1 | March 29 2013 | X | WINDOW GLAZING EXT/bsm... A |
| 22.I-2 | | X | WALL PLASTER BED RM LR |
| 22.I-3 | | X | WALL PLASTER BED RM 2 R |
| 22.I-4 | | X | WALL PLASTER 2nd Fl smething R |
| 22.I-5 | | X | WINDOW GLAZING BED RM I D |
| 22.I-6 | | X | FLOORING 2nd Fl BATH |
| 22.I-7 | | X | FLOORING 2nd Fl BATH |
| 22.I-8 | | X | ROOF SHINGLE |
| 22.I-9 | | X | ROOF SHINGLE |
| 22.I-10 | | X | FLOORING room 4 |
| 22.I-11 | | X | FLOORING room 4 |
| 22.I-12 | | X | FLOORING KIT |
| 22.I-13 | | X | FLOORING KIT |
| 22.I-14 | | X | FLOORING KIT |
| 22.I-15 | | X | PIPE INSULATION BASEMENT ground |
| 22.I-16 | 4:10 P.M. | X | TRANSITE SIDING |

Released by: Doug Hart    Signature: Doug Hart
Received by:    Signature:

Date/Time: March 29 2013 5:00 P.M.
Date/Time: 4-1-13

ATTACHMENT 5

WORK ORDER



# NUISANCE ABATEMENT NOTICE OF POSSESSION

**NOP # 8**

March 2, 2013

HART ENVIRONMENTAL, INC.
262 Hedge Drive
Springfield, OH 45504

CT12-0330

Subject:    2012 NAP RESIDENTIAL ASBESTOS SURVEY AND POST ABATEMENT
VERIFICATION INSPECTIONS 1 GENERAL FUNDS

This Transmittal is **Notice of Possession # 8** for the performance of asbestos surveys on the properties listed herein.

A Notice of Possession under this agreement hereby gives you possession of the entire parcel(s) including the structures and all contents for the purpose of performance of asbestos surveys.

| ADDRESS | LOT# | TYPE | AMOUNT |
|---|---|---|---|
| 39 Diamond | 23283 | One Story/Bsmt | $440 |
| 19 N Garland | 37215 | Two Story/Bsmt | $470 |
| 20 N Garland | 37226 | Two Story/Bsmt | $470 |
| 140 N Garland | 30894-95 | Two Story/Bsmt | $470 |
| 3207 Highview Hills | 75279 | One Story/Crawl | $420 |
| 1402 Holly | 27069 | Two Story/Bsmt | $470 |
| 3201 Ralliston | 75228 | One Story/Crawl | $420 |
| 3415 Ralliston | 75242 | One Story/Crawl | $420 |
| 2101 Victoria | 71448 | One Story/Bsmt | $440 |
| 916 Xenia | 20417 | Two Story/Bsmt | $470 |
| 22 Illinois | 20771-26883pts | One Story/Bsmt | $440 |
| 28 Illinois | 20771-26388pts | One Story/Bsmt | $440 |

This Notice of Possession becomes effective at 12:01 a.m. Eastern Standard Time in Ohio on March 4, 2013 which is established as the beginning date of survey activities on these parcels. Furthermore, the time for completion is 14 working days or March 25, 2013.

Sincerely,

Dennis Zimmer
Nuisance Abatement

DZ:



Exhibit D

### City of Dayton
### Department of Building Services
### Housing Inspection Division

# Authorization to Enter a Public Nuisance
#### (DURING DAYLIGHT HOURS ONLY)

The following individual(s) is(are) hereby authorized to enter upon the premises located

at _____ 22 Illinois _____
ADDRESS

and known to have been boarded by the City of Dayton and/or be a public nuisance.

_____ Katherine Mitchell _____

_____ For Grass Mowing ONly _____

_____
NAMES

This Authorization expires at 5:00 P.M. on ___ June 1, 2013 ___
DATE

**This Authorization does not indicate or imply that the named individual(s) has ownership rights to the property, or has permission from the property owner to be on the premises. Entering the property without owner's permission could possibly result in trespassing or breaking and entering charges being filed.**

**This is NOT an authorization to perform rehab work. To perform work you must first obtain a Special Rehab Permit. For further assistance contact Housing Inspection at (937) 333-3977.**

By: _____     Date: _____
HOUSING INSPECTION DIVISION DESIGNEE

HID-1-0a, 9-1-2000  REV.0707